UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| RENEE KARIN OLINGER,<br><br>Petitioner,<br><br>vs.<br><br>ANDREW SAUL, Commissioner of Social Security,<br><br>Respondent. | Case No.: 1:18-cv-00142-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending is Petitioner Renee Karin Olinger's Petition for Review[1] (Dkt. 1), appealing the Social Security Administration's final decision finding her not disabled and denying her claim for supplemental security income benefits.[2] *See* Pet. for Review (Dkt. 1). This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## I. ADMINISTRATIVE PROCEEDINGS

On April 6, 2015, Petitioner Renee Karin Olinger ("Petitioner") protectively applied for supplemental security income. (AR 18.) Petitioner alleged disability beginning January 1, 2001, later amending her alleged onset date to March 1, 2017. (*Id.*) Her claim was denied initially on

---

[1] The pleading initiating this case bears the title "Complaint," but the filing is designated in the electronic filing system, more accurately, as a petition for review. Consistent with the usual practice in this District, it will be referred to as a "Petition for Review" throughout this decision. Similarly, the parties will be referred to as "Petitioner" and "Respondent" rather than "Plaintiff" and "Defendant."

[2] Andrew Saul became the Commissioner of the Social Security Administration on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul is substituted in as the Respondent in this suit. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

**MEMORANDUM DECISION AND ORDER – 1**

June 7, 2015 and then again on reconsideration on August 28, 2015. (*Id.*) On October 7, 2015, Petitioner timely filed a written request for hearing before an Administrative Law Judge ("ALJ"). (*Id.*) Petitioner appeared and testified at a hearing held on May 26, 2017 in Boise, Idaho. (*Id.*) Impartial vocational expert Polly Peterson also appeared and testified at the hearing. (*Id.*) At the hearing, Petitioner amended her alleged onset date to March 1, 2017. (*Id.*)

On August 8, 2017, ALJ Stephen Marchioro issued a decision denying Petitioner's claim, finding that Petitioner was not disabled within the meaning of the Social Security Act during the period from her filing date of April 6, 2015 through the date of the decision. (AR 29–30.) Petitioner timely requested review from the Appeals Council on August 25, 2017. (AR 186–187.) On January 30, 2018, the Appeals Council denied Petitioner's Request for Review, making the ALJ decision the final decision of the Commissioner of Social Security. (AR 1.)

Having exhausted her administrative remedies, Petitioner filed this case. She contends that "[t]he conclusions and findings of fact of the [Respondent] are not supported by substantial evidence and are contrary to law and regulation." Pet. for Review 2 (Dkt. 1). Petitioner argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ failed to properly weigh opinion evidence of record, instead relying on his own lay interpretation of the medical data. *See generally* Pet'r's Mem. (Dkt. 17). Petitioner asks that the ALJ's decision be vacated and this matter be remanded for further administrative proceedings, including a *de novo* hearing and decision. *Id.* at 13.

## II. <u>STANDARD OF REVIEW</u>

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Trevizo v. Berryhill*, 871 F.3d 664 (9th Cir. 2017). Findings as to any question of fact, if supported by substantial evidence, are

**MEMORANDUM DECISION AND ORDER – 2**

conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *See Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014).

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Ludwig v. Astrue*, 681 F.3d 1047, 1051 (9th Cir. 2012). The standard requires more than a scintilla but less than a preponderance (*Trevizo*, 871 F.3d at 674), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson*, 402 U.S. at 401; *see also Ludwig*, 681 F.3d at 1051. The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Treichler*, 775 F.3d at 1098. Where the evidence is susceptible to more than one rational interpretation, the reviewing court must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Ludwig*, 681 F.3d at 1051. In such cases, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Zavalin v. Colvin*, 778 F.3d 842, 845 (9th Cir. 2015); *Treichler*, 775 F.3d at 1098. Considerable weight must be given to the ALJ's construction of the Social Security Act. *See Vernoff v. Astrue*, 568 F.3d 1102, 1105 (9th Cir. 2009). However, reviewing federal courts "will not rubber-stamp an administrative decision that

is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III. DISCUSSION

#### A. Sequential Process

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is work activity that is both substantial and gainful. 20 C.F.R. §§ 404.1572, 416.972. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant is engaged in SGA, disability benefits are denied regardless of her medical condition, age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner did not engage in substantial gainful activity during the period from her filing date of April 6, 2015 through the date of the ALJ's decision. (AR 20.)

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits

an individual's physical or mental ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" if it does not significantly limit the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1522, 416.922. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that, as of the date of his decision, Petitioner had the following severe impairments: "diabetes mellitus; status post great left toe and second left toe amputations; peripheral neuropathy; history of pneumococcal meningitis; schizoaffective disorder; anxiety disorder." (AR 20.)

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal a listed impairment, her claim cannot be resolved at step three and the evaluation proceeds to step four. 20 C.F.R. §§ 404.1520(e), 416.920(e). Here, the ALJ found that Petitioner did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (AR 21–22.)

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. An individual's past relevant work is work she

performed within the last 15 years or 15 years prior to the date that disability must be established, as long as the work was substantial gainful activity and lasted long enough for the claimant to learn to do the job. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner had the RFC:

> to perform light work as defined in 20 CFR 416.967 (b) except she would have to be able to alternate between sitting and standing while remaining at the work station, in that she can stand for up to 15 minutes before having to sit for 5 minutes; she can never operate foot controls with the left lower extremity; she can frequently climb ramps/stairs and balance; she can never climb ladders, ropes, or scaffolds; she can occasionally be exposed to extreme cold or extreme heat; she must avoid all exposure to vibration with the left lower extremity; she should avoid all use of unguarded moving mechanical parts and exposure to unprotected heights; she is limited to work consisting of simple, routine tasks with occasional changes in the work setting and occasional interaction with the public.

(AR 23.) Based on the ALJ's finding that Petitioner has no past relevant work, the ALJ further found that Petitioner's claim could not be resolved at this step of the analysis. (AR 38.)

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Garrison v. Colvin,* 759 F.3d 995, 1011 (9th Cir. 2014). If the claimant can do such other work, she is not disabled; if the claimant is not able to do other work and meets the duration requirement, she is disabled. Here, the ALJ found that Petitioner's RFC is compatible with work as a "mail sorter," "photo copy machine operator," and "toy assembler." (AR 29.) The ALJ further found that these jobs exist in significant numbers in the national economy. (*Id.*)

Based on the finding that Petitioner could perform jobs that exist in significant numbers in the national economy, the ALJ ultimately concluded that Petitioner "has not been under a

disability, as defined in the Social Security Act, since April 6, 2015, the date the application was filed." (AR 29.)

**B.     Analysis**

Petitioner raises two primary issues with the ALJ's decision, both related to how he weighed the opinion evidence of record.  First, Petitioner argues the ALJ failed to properly weigh the physical opinion evidence of non-examining State agency consultants.  Second, Petitioner argues the ALJ failed to properly weigh the psychological opinion evidence of the examining psychologist and two non-examining State agency consultants.  In both instances, Petitioner argues that the ALJ's decision is not supported by substantial evidence because he improperly relied on his own lay interpretation of the medical data rather than properly weighing the opinion evidence.

**1.  The ALJ Erred in Weighing Physical Opinion Evidence.**

Petitioner contends the ALJ erred by giving only "limited weight" to the physical opinion evidence of the State agency consultants.  Pet'r's Mem. 8–11 (Dkt. 17).  Her implication, obviously, is that the ALJ should have given such opinions greater weight and she says that because the ALJ improperly dismissed such opinions he "left himself with no one to interpret the raw medical data in order to base his RFC." *Id.* at 9.  From there, Petitioner argues that the ALJ was obligated to further develop Petitioner's medical record before deciding whether she is disabled.  Finally, Petitioner asserts that because the ALJ's RFC determination is not supported by any medical opinion, it cannot be supported by substantial evidence.  She contends that the ALJ substituted his own judgment for competent medical opinion.

With one exception, Petitioner's arguments on this point are not persuasive.  State agency consultants Dr. Thomas Coolidge, M.D., and Dr. Leslie Arnold, M.D., expressed opinions on

**MEMORANDUM DECISION AND ORDER – 7**

Petitioner's physical limitations in June 2015 and August 2015, respectively. (AR 27.) Each opined that Petitioner "could perform sedentary work with additional postural and environmental limitations." (*Id.*) The ALJ gave these opinions limited weight because he found they were not consistent with the record considered as a whole. Specifically, he found that:

> Both opinions were given at a time when the claimant was noted to have poor compliance with diabetes treatment and was experiencing complications. While their opinions may have been accurate at the time they were rendered, the claimant has amended the alleged onset date to March 1, 2017, approximately 1.5 years after the opinion of Dr. Arnold. The more recent medical records and the claimant's testimony indicate she had good healing from her toe amputations and largely recovered from her hospitalizations. She testified at the hearing, moreover, that she has been more recently compliant with diabetes medication. Accordingly, limited weight is given.

(*Id.*)

It is the Petitioner's burden in the first instance to prove that she is disabled and entitled to supplemental security income benefits. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). An ALJ is not automatically obligated to develop the record further upon concluding that the evidence of record does not establish a claimant is disabled. Rather, an ALJ has a "duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). Such a duty is heightened when a claimant is unrepresented or unable to protect her own interests. *Id.* Petitioner suggests that the ALJ had a duty to order a consultative examination because either her medical records lacked needed additional evidence or the case record contained a conflict, inconsistency, ambiguity, or insufficiency that the ALJ needed to resolve.

This is not a case where the ALJ's duty to develop the record further was triggered. The ALJ's decision named two attorneys who represented Petitioner and Petitioner does not suggest that she is or was unable protect her own interests. Moreover, Petitioner points to no "conflict,

inconsistency, ambiguity, or insufficiency" in the record before the ALJ that would require further development of the record. Rather, the record contains two medical opinions by State agency medical consultants that, according to the ALJ, had become outdated as well as inaccurate by the time of Petitioner's amended alleged onset date.[3]

Nonetheless, an ALJ's decision must be supported by substantial evidence to withstand judicial review, a measure which is not met on this record with regard to the circumstances of Petitioner's diabetes treatment and management. To begin, Dr. Coolidge opined in June 2015 that Petitioner "has uncontrolled diabetes due to non-compliance with taking medication and testing blood sugars. . . . Given Claimant's uncontrolled [diabetes mellitus] with [history] of [peripheral neuropathy] and foot ulcers, she should limit her to standing/walking 2 hrs in 8 hr work day and should avoid unprotected heights, limiting her to sedentary RFC." (AR 76.) Dr. Coolidge further opined that Petitioner could occasionally lift or carry 10 pounds and frequently lift or carry less than 10 pounds. (AR 79.) Dr. Arnold's opinion in August 2015 corroborates Dr. Coolidge's assessment, documenting Petitioner's history of uncontrolled diabetes and non-compliance with diabetes management and assessing Petitioner with a sedentary RFC and the same lifting and carrying limitations. (AR 92–93.)

During the May 26, 2017 hearing, the ALJ noted Petitioner's history of medication noncompliance but then noted that recent treatment records seem to indicate she had been doing much better. (AR 49–50.) Petitioner then testified that she had been compliant with her diabetes medication for "maybe a year." (AR 50.) The ALJ relied on this testimony, referencing it

---

[3] Notably, Petitioner amended her onset date to the first day of the month in which she reached 50 years of age, so that the State agency consultants' opinions that she be limited to a sedentary RFC – if credited – would cause the ALJ to find her disabled under applicable Social Security regulations, the so-called "Grid Rules." (AR 43; *see* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 201.00(g).)

**MEMORANDUM DECISION AND ORDER – 9**

expressly in his decision. (AR 27.) However, the medical records indicate that Petitioner was not compliant with her diabetes medication in the year preceding her ALJ hearing. In October 2016, certified physician assistant Christopher Gunderson described Petitioner's diabetes as "uncontrolled" (AR 871) and in follow-up two months later, Mr. Gunderson recorded his observation that Petitioner's diabetes was "poorly controlled" with "poor follow through and follow up." (AR 868.)

Moreover, in January 2017, Dr. Daniel S. Ross, M.D. charted that Petitioner was "[n]ot checking sugars. Moved few months ago and does not have glucometer, cannot find. Not sure what type of insulin she is using … 'out of insulin since last week.'" (AR 862.) Dr. Ross further noted that Petitioner's diabetes at that time was uncontrolled and that her "[m]edication adherence [is] poor due to poor understanding, limited resources." (AR 863.)

The record thus contains substantial evidence that, despite Petitioner's testimony to the contrary, she was not compliant with her diabetes treatment during the year prior to the ALJ hearing in May 2017. This contradiction undermines the ALJ's exclusive reliance on Petitioner's testimony on this point because he did not address the opposing evidence. The ALJ gave only limited weight to the 2015 opinions of the State agency medical consultants; he viewed the opinions as inconsistent with the record because although they "were given at a time when the claimant was noted to have poor compliance with diabetes treatment and was experiencing complications," the Petitioner herself said "she has been more recently compliant with diabetes medication." (AR 27.)

Hence, the ALJ's decision leaves behind and does not address the medical records – substantial evidence themselves – which plainly indicate that Petitioner was not compliant with her diabetes management. The ALJ cited non-compliance in 2015 versus compliance in 2017 as

a basis for limiting the weight of the 2015 opinions, but he did not address the conflicting evidence regarding whether, factually, there was non-compliance in 2017. Rather, he uncritically relied on Petitioner's testimony, despite its stark inconsistency with the medical evidence of record and despite Petitioner's other testimony that she suffers from "very short-term memory loss" (AR 53) and that her "brain just gets really cloudy and like clouded and I can't think straight." (AR 59.) Accordingly, his decision to afford the 2015 opinions only limited weight on this basis is not supported by substantial evidence.

To be clear, this Court does not opine on whether Petitioner was compliant with her diabetes management in 2017. That is, the Court does not weigh the medical records indicating non-compliance during that period against Petitioner's own testimony that she had been compliant with diabetes management for "maybe a year." Resolving conflicting evidence in the record is the purview of the ALJ, not the reviewing court. *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). The ALJ's error in this case was in not addressing the conflicting evidence – conflicting evidence that, in this case, fatally undermines the ALJ's basis for assessing the weight to be afforded to the opinions at issue.

This decision also does not address the other basis relied upon by the ALJ in deciding what weight to give such evidence. In addition to noting a change from non-compliance to compliance with diabetes management, the ALJ also noted that in 2015 Petitioner was experiencing complications from her diabetes while in 2017 she was not. Regardless of whether substantial evidence supports this basis for limiting the weight of the opinions, it is framed to support the ALJ's broader conclusion that the opinions are not consistent with the entire record. Because the ALJ's error in not discussing the conflicting evidence about Petitioner's diabetes management compliance in 2016–2017 touches directly on whether the 2015 opinions are

consistent with the record as a whole, the decision must be reversed, and the case remanded on this point. Similarly, the fact that the opinions were rendered some eighteen months before the amended alleged onset date is not, standing alone, substantial evidence supporting the assigned weight, where this Court has rejected of one of the bases on which the ALJ relied and nothing in the ALJ's decision indicates the relative strength of the bases he cited.

Petitioner's alternative arguments that the ALJ erred in weighing the physical opinion evidence need not be addressed because the Court is persuaded Petitioner has shown error in the ALJ's weighing of such opinions. Petitioner has shown that the ALJ's giving little weight to the medical opinions of the State agency consultants was error because there is conflicting evidence that the ALJ failed to address regarding whether the opinions are inconsistent with the record, as the ALJ indicated. The Petition will therefore be granted as to this issue.

**2. The ALJ Did Not Err in Weighing Psychological Opinion Evidence.**

Petitioner next argues the ALJ erred in weighing the three psychological opinions of record. Pet'r's Mem. 11–13 (Dkt. 17). Psychologist Dr. Martin Seidenfeld, Ph.D., examined Petitioner and rendered an opinion in September 2014. (AR 303–308.) In evaluating Dr. Seidenfeld's opinion, the ALJ noted various components of the opinion and then said:

> Little weight is accorded to Dr. Seidenfeld's opinion because it was given approximately 2.5 years prior to the amended alleged onset date and was based on a one-time examination. Furthermore, his opinion was given at a time when the claimant was not yet abstinent from methamphetamine. Though the claimant reported to Dr. Seidenfeld that she had not used any methamphetamine in the last 10 years, there is evidence she was using methamphetamine in December 2014 and later as well. Ex. 5F/5, 10 (diagnosis of methamphetamine use based on positive drug screen in December 2014); l0F/18-20. Therefore, Dr. Seidenfeld did not consider the extent to which drug use may have affected the claimant's symptoms and mental functioning.

(AR 28.)

The ALJ also considered the opinions of State agency psychological consultants Dr. Mack Stephenson, Ph.D., and Dr. Barney Greenspan, Ph.D. (AR 73–87, 89–104.) He gave significant weight to the opinions of Drs. Stephenson and Greenspan because "they are experts in disability evaluation and had the opportunity to review the longitudinal medical record at the time of their assessments. Their opinions are generally consistent with the entire record, which shows no mental health treatment, including emergent treatment for mental health issues." (AR 27.) However, the ALJ also said that:

> to the extent Drs. Stephenson and Greenspan indicated that the claimant has greater limitations, their opinions are given little weight because they are not consistent with the record as a whole. For example, to the extent they indicate the claimant could concentrate only on "very simple" tasks, the record does not support this where the claimant is able to drive and perform other activities as discussed above.

(*Id.*)

Petitioner contends it was error for the ALJ to discount the opinion of Dr. Seidenfeld, the only examining psychologist, while generally crediting the opinions of two non-examining State agency psychological consultants. Moreover, Petitioner argues the ALJ erred by assigning an RFC limiting Petitioner to "simple, repetitive work" because such a limitation fails to adequately address the limitation – espoused by all three psychological consultants – that Petitioner could concentrate only on very simple tasks and that she suffers moderate limitations in concentration, persistence, or pace.

These arguments are not persuasive. The ALJ relied on substantial evidence in discounting Dr. Seidenfeld's opinion – namely, that the opinion was outdated and that Dr. Seidenfeld's examination occurred prior to Petitioner's abstinence from methamphetamine. None of Petitioner's arguments undermines the substantial evidence on which the ALJ relied in discounting Dr. Seidenfeld's opinion. Moreover, Petitioner's argument relies on 20 C.F.R.

§ 416.927(c)(1), which provides that "*[g]enerally*, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you." (Emphasis added.) As Respondent points out, "[i]n appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p, 1996 WL 374180 at *3. The ALJ's assertion that the State agency consultants possessed expertise in disability evaluation, reviewed Petitioner's longitudinal medical record, and issued opinions that are generally consistent with the rest of the record establishes that in this case it was not improper to afford the State agency consultants' opinions more weight than the opinion of the examining medical source. Petitioner has not shown that the ALJ erred in his relative weighting of the three psychological opinions of record.

Nor has Petitioner shown that the ALJ erred by rejecting the State agency consultants' opinions to the extent they recommended a more limiting RFC than what the ALJ ultimately found. Petitioner suggests the ALJ "incorrectly cherry-picked evidence." Pet'r's Mem. 12 (Dkt. 17). But it is the ALJ's prerogative to assess the entire record and make his own findings based on such evidence. An ALJ is not obligated to credit all portions of a medical opinion, or of any other evidence, equally. Indeed, "[i]t is not necessary to agree with everything an expert witness says in order to hold that his testimony contains substantial evidence." *Magallenes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989) (citation and internal quotation marks omitted). It is the ALJ's obligation, in the first instance, to evaluate the evidence and decide whether a claimant is disabled. Here, the ALJ rejected the consultants' opinions as too restrictive when they opined that Petitioner be limited to "very simple tasks" based on the record evidence that Petitioner was capable of driving an automobile. The ALJ's treatment of the medical opinions, and his RFC

based on such opinions, are therefore supported by substantial evidence. Petitioner has not shown otherwise.

Petitioner also asserts error based on the ALJ's alleged failure to include all of her functional limitations in the RFC included in the hypothetical posed to the vocational expert. But Petitioner has not shown that the ALJ did fail to include all her functional limitations in the RFC. The ALJ found that Petitioner was not functionally limited to the same extent as the consultants opined, and such finding is supported by substantial evidence. Therefore, the hypothetical posed to the vocational expert was not in error.

Finally, Petitioner contends that it is error for the ALJ to conclude that "the phrase 'simple, repetitive work' encompasses difficulties with concentration, persistence, or pace" when the medical testimony "establishes a limitation in concentration, persistence or pace." Pet'r's Mem. 12–13 (Dkt. 17). Citing various decisions, she argues that an RFC limiting a claimant to simple, routine work cannot adequately capture moderate difficulty with concentration, persistence, or pace – as the ALJ found in this case. Most directly, Petitioner observes that in *Brink v. Comm'r*, 343 Fed. App'x 211 (9th Cir. 2009) (unpublished), it was held to be error for the ALJ to assign an RFC permitting "simple, repetitive work" without including limitations on concentration, persistence, or pace after finding the claimant to have moderate difficulties in those areas. Petitioner additionally compares her case to *Gray v. Astrue*, in which this Court vacated an RFC of "simple, routine and repetitive tasks …" because the ALJ credited a medical opinion that Gray's ability "to sustain concentration and persist is mildly to moderately impaired" but thereafter assigned an RFC that "did not adequately incorporate Petitioner's limitations with respect to concentration and persistence." 2012 WL 4097762, at *8 (D. Idaho Sept. 17, 2012).

Respondent, however, notes that the ALJ's finding of moderate limitations with concentration, persistence, or pace are perfectly consistent with the opinions of the State agency consultants. Those opinions were that Petitioner was "[m]oderately limited" with respect to "[t]he ability to understand and remember detailed instructions"; "[t]he ability to carry out detailed instructions"; and "[t]he ability to maintain attention and concentration for extended periods." (AR 82–83, 98–99.) Moreover, each opinion indicated that Petitioner has "sustained concentration and persistence limitations." (AR 82, 99.) At a summary level, each opinion indicates that Petitioner's "Difficulties in Maintaining Concentration, Persistence or Pace" were "Moderate." (AR 77, 94.) The ALJ used identical language in his decision, stating that Petitioner has "moderate limitations in concentrating, persisting, or maintaining pace."[4]

Finally, the RFC assessed by the ALJ used language that tracked closely to the consultants' opinions regarding the effect of such limitations on Petitioner. As stated in their opinions, the consultants each concluded – based in part on their findings of moderate limitations with concentration, persistence, or pace – that Petitioner's "ability to concentrate is limited to only very simple tasks" and that she should be "[l]imited to simple, repetitive work." (AR 85, 101.) The ALJ's RFC, in relevant part, limited Petitioner "to work consisting of simple, routine tasks." Thus, the ALJ's decision incorporated both (1) the opinion that Petitioner was moderately limited in concentration, persistence, and pace; and (2) the ultimate opinion that – Petitioner's limitations in concentration, persistence, and pace notwithstanding – Petitioner should be limited to simple work.

---

[4] It is no surprise that the ALJ used the same language, given that one of the so-called "paragraph B" criteria for evaluating mental disorders expressly considers difficulties in concentration, persistence, or pace. *See* 20 C.F.R. Part 404, Subpart P, App. 1.

**MEMORANDUM DECISION AND ORDER – 16**

This case therefore differs from *Brink* in that the factual setting here contains substantial evidence supporting the ALJ's RFC: the ALJ's limitation to "simple, routine tasks" adequately captured Petitioner's moderate difficulties with concentration, persistence, or pace because the consultants' opinions on which the ALJ relied recommended such a limitation despite finding moderate difficulties in the same areas. That is, the fact that the State agency consultants opined both that Petitioner had moderate difficulties in these areas and that she should be limited to simple, repetitive work provides substantial evidence for the ALJ to assign an RFC limiting her to "simple, routine tasks" without otherwise addressing her moderate difficulties with concentration, persistence, or pace.

This case differs from *Gray* for essentially the same reason. In *Gray*, the error was that the RFC did not address limitations in concentration or persistence. Here, however, because the ALJ assigned an RFC consistent with the State agency consultants' opinions, which themselves were rendered in light of assessments of moderate difficulties with concentration, persistence, or pace, Petitioner has not shown that the RFC failed to address such limitations. Stated differently, the consultants' opinions that Petitioner should be limited to simple work subsume their additional opinions that she suffers moderate difficulties in concentration, persistence, or pace because they appear in the same document and were issued at the same time. Thus, the ALJ's RFC mirroring those opinions in such a respect also adequately incorporates and addresses such limitations.

For these reasons, Petitioner has not shown that the ALJ erred in weighing the psychological opinions of record, and her Petition will not be granted on such a basis.

## IV. CONCLUSION

Petitioner has shown that the ALJ committed reversible legal error by failing to resolve a substantial and material conflict in the evidence of record regarding whether Petitioner was compliant with her diabetes management in the year prior to her ALJ hearing. The ALJ specifically erred by relying exclusively on Petitioner's testimony while failing to address substantial evidence contrary to such testimony when deciding how to weigh the physical opinions of record. Therefore, the ALJ's decision is not supported by substantial evidence and it is reversed. The proper remedy is to remand for reconsideration.

## V. ORDER

Based on the foregoing, Petitioner's Petition for Review (Dkt. 1) is **GRANTED,** the decision of the Commissioner is **REVERSED**, and this action is **REMANDED** to the Commissioner of Social Security under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this opinion.

DATED: September 27, 2019

Honorable Ronald E. Bush
Chief U.S. Magistrate Judge